THE PEOPLE *vs.* JOSEPH CLARK.   THE PEOPLE *vs.* JAMES SULLIVAN.

The court of last resort in this state is the exclusive judge of its own jurisdiction, and its decision on that point can not be questioned by the court below, when directed to carry into effect a judgment of reversal; but where the jurisdictional question has not been decided by the court of last resort, it is open to examination in the court below.

A sentence inflicting corporeal punishment can not be pronounced in the absence of the defendant; but the personal presence of the defendant is not necessary where a fine only is imposed.

On a writ of error brought to reverse a judgment in a capital case, the personal attendance of the defendant on the argument or at the decision in the appellate court, is not necessary to give such court jurisdiction.

The court of appeals having reversed the judgments rendered by the supreme court in both these cases, the district attorney applied to the supreme court, to issue warrants for the execution of the defendants.   The grounds of the motion are sufficiently stated in the opinion of the court.

*N. B. Blunt* (District Attorney), for the people

The People *v.* Clark.

*J. McKeon,* and
*R. H. Morris,* for the defendants.

*By the Court,* MITCHELL, J.—The prisoners in both these cases were tried at the Oyer and Terminer and found guilty of murder. The judge who presided at the trial charged the jury as to the meaning of the statute defining murder; the prisoners, by their counsel, excepted to the charge, and a writ of error was brought to this court. This court pronounced the charge of the judge erroneous, and in May last ordered a new trial. In pursuance of a statute passed in the preceding March, a writ of error was brought to review our judgment, and the court of appeals has reversed our judgment and affirmed that of the Oyer and Terminer. During all that time the prisoners have remained in prison, except when they have been brought before the Oyer and Terminer, or this court. They are now brought up before us, pursuant to sections 23 and 24 of 2 R. S. 659, the district attorney insisting that the sentence of death remains in full force, and that no legal reasons exist against the execution of the sentence and calling on the court to issue a warrant for the execution. The prisoners by their counsel insist in opposition to this motion that the order of this court granting a new trial remains in force and assign various reasons all intended to show that the court of appeals had not gained jurisdiction of the case when their decision was made. The prisoners' counsel very properly refrained from addressing to the court a single argument against the decision of the higher court, on the point on which that court and this differed. If the appellate court had jurisdiction, its decision became the law of the case; and when remitted to the court for execution, became the law and judgment of this court by virtue of the higher authority of that court; and as we would have been bound to enforce obedience by the Oyer and Terminer to the judgment of this court, while it remained unreversed, so are we bound to receive the judgment of the higher court and even to carry its decrees into execution when that court has decided within its jurisdiction, whatever may be our individual opinions. But the question whether the

court of appeals had jurisdiction, was very properly argued before us. It may be admitted that an appellate court, and especially (in the words of Ch. J. Marshal) " that the court of dernier resort in every state decides upon its own jurisdiction." (8 *Peters, U. S. R.* 320.) But in this case, the question now presented, whether in a criminal case where the punishment is to be corporeal, any court has jurisdiction over the prisoner unless he be brought before it, was never brought before that court, and so that court did not " decide upon its own jurisdiction in that respect." The question, therefore, remains open. Certainly there are cases in which it would be our plain duty to pass on such a question; and if, in any case, we should not hesitate to fulfill that duty, it would be when the law directs us to ascertain whether the sentence of death against two individuals still " stands in full force," and whether any "legal reasons exist against the execution of such sentence." If the act of March 22, 1852, giving the court of appeals jurisdiction in such a case had not been passed, then according to its own decision in *The People* v. *Corning* (2 *Comst.* 9), it would have had no jurisdiction, and its decisions would consequently have been of no authority, and it would have been the duty of this court not to carry out its decision so made. If, however, on a professed reexamination of that case, it had recalled that decision, it had the power to do so; but if there were no evidence that it had reexamined it, or professed to pass on the question of its jurisdiction again, the fair inference would be that that question had been overlooked rather than that the court had indirectly reversed its deliberate decision made directly on the point. The supreme court of the United States is, where it has jurisdiction, as much above the court of appeals as that court is above this, yet if the writ of error had issued since the act of 1852, from the United States court to this court, and the United States court had pronounced the same judgment that the court of appeals has, this court would have no right to obey it, as the supreme court can issue its writ of error only in certain cases, and then " to the highest court of law or equity of the state in which the decision is made," and not to any but the highest

The People *v.* Clark.

court. Nor would that, the highest tribunal of the country, disapprove of such a course. In the case of *Davis* against *Packard*, that court decided that the judgment of the court for the correction of errors was erroneous, and adjudged that the judgment of the court for the correction of errors in this state be reversed, and that the cause be remanded to the court for the correction of errors with directions to conform its judgment to that opinion. (8 *Peters, U. S. Rep.* 321.) The court of errors evaded conforming its judgment to that opinion, by announcing in its judgment the opinion of the United States court, and then declaring that the court of errors had no jurisdiction to reverse a decision of our supreme court for an error in fact, and therefore quashed the writ of error which it had issued, and thus in effect left the erroneous judgment of the supreme court in full force. The United States court recognizing the principle that the court of dernier resort in the state could conclusively judge of its own jurisdiction, yielded to the decision and affirmed this last judgment of the court of errors. By this decision of the highest court of our state, if a decision were needed on that point, there are cases where it has no jurisdiction, and that decision is affirmed by the highest tribunal in the union. To the same effect is the decision of the court of appeals in *Oakley* v. *Aspinwall* (2 *Comst.* 548), where that court vacated its own judgment of reversal, because one member of the court had sat at the argument, who, by law, had no right to sit there on account of being distantly related to one of the parties, although the counsel who moved to vacate the judgment had requested him to sit. It is admitted and proved that the prisoners were at no time before the court of appeals, and the record shows that they appeared there by their counsel. The judgment of the court is that the judgment of the supreme court be reversed and that of the Oyer and Terminer in all things affirmed, and that the record be remitted to the supreme court, in order that this court may direct the sentence of death to be executed. The cases state most decidedly that no corporeal punishment can be lawfully awarded by the court in the absence of the prisoner. Whether they mean that

the judgment awarded in his absence would be erroneous merely, or without jurisdiction, is a material question. In *Lofft*, 409, the court was informed that the crown was inclined to mercy, and was desired to discharge the prisoner on some corporeal punishment, as he was too poor to pay a fine. They said " they could not award corporeal punishment *in absentem*," and imposed a fine of one shilling. The case of *Rex* against *Harris* and against *Duke*, in 9 William III, is reported in a number of authorities. There the court was called on to pronounce judgment in the absence of the party, after he was outlawed. In *Holt*, p. 399, C. J. Holt is reported to have said: " Sir Samuel Astny tells me there never was a writ to the sheriff to take up any man that was at large and to put him in the pillory; therefore, I think we can not give any such judgment in the absence of the party, which can not be executed. If he be in court, we deliver him to the marshal, and an entry is on the roll that the marshal do execution *periculo incumbente.* And if we were to send him into Somersetshire there is to be a writ of assistance to the sheriff, but if he came from Newgate hither, then if he be remanded there goes indeed a writ to the sheriff, but then *constat de persona."* The difficulties here stated are, that there was no writ known after judgment, to bring up the prisoner before the officer who was to execute the judgment, and that if such a writ issued (it not bringing the party into court but before the officer only) the person taken would have no opportunity to show that he was not the one who, by the judgment, was to be punished. These objections would not exist in an appellate court, which was not to cause the sentence to be executed, but to devolve that responsibility on the court below. C. J. Holt added: " I never knew a judgment for corporeal punishment unless the party were present, except in the case of Mrs. Buckridge, which was irregular." In the case of Duke, he said: " Judgment can not be given against any man in his absence, for a corporeal punishment. He must be present when it is done. If a man was outlawed for felony, execution was never awarded against the felon till brought to the bar. There is no precedent of any such entry; for if we give judgment that

The People *v*. Clark.

he should be put in the pillory, it might be demanded when, and the answer would be, when they catch him. And there never was a writ to take a man and put him in the pillory; it is not like to a *capias pro fini*, which is to bring him into court to pay the money. A defendant may submit to a fine though absent, if he has a clerk in court that will undertake for the fine." The opinion is given to the same effect in *Lord Raym.*, 267, 1 *Salk.* 400, and *Skinner*, 684; *Combroback*, 447 and 12; *More*, 156, and section 2, *Hawk.* pl. cr., ch. 48 and 17, and *Barbour's Criminal Law.* The difficulties here stated are of a like character to those before noticed, and do not apply to a court which is not to award the execution, but is merely to order another court to award it. In 1 *Salk.* 556, *Queen* v. *Templeman*, it was again said that when a man is to receive any corporeal punishment, judgment can not be given against him in his absence, for there is no process to take a man and put him in the pillory. In *Rex* v. *Hann & Price* (3 *Burr.* 1786), it was agreed that if a fine only was to be imposed, it was in the discretion of the court to give judgment in the absence of the defendants; but otherwise they should be present. And it was said that even if a fine was to be imposed and the case was of a gross nature, the defendants should appear in person for the sake of example, and to prevent the like offences being committed by others, as the notoriety of their being called up to answer criminally for such offences would very much conduce to deter others from venturing to commit the like. These reasons only apply when the sentence is about to be executed Chitty says in his Criminal Law, p. 695: "When any corporeal punishment is to be inflicted on the defendant, it is absolutely necessary that he should be personally before the court at the time of pronouncing the sentence, and he assigns the reasons given in the above cases." He adds: " And when he is committed to prison, it ought to appear upon the record that he was present at the time of the committal. So when a judgment has been once pronounced on a trial, and execution awarded against him, which is subsequently countermanded, so that he is not put to death at the time specified and part of the ensuing term

has elapsed, execution can not afterwards be awarded without bringing him again to the bar in person." (See, accordingly, *Kingsley's Case*, quoted by C. J. Hall in Lord Raym., 482, and at p. 700.) "It is now indispensably necessary, even in clergyable felonies, that the defendant shall be asked by the clerk if he has anything to say why judgment of death should not be pronounced on him, and it is material that this appear upon the record to have been done, and its omission after judgment in high treason, will be a sufficient ground for the reversal of the attainder." In 3 *More*, 265, " an anonymous case is given where an attainder was reversed on account of this omission in the record," and this good reason is given for requiring it to be asked, " that possibly he might have pleaded a pardon." That advantage, and all others which the prisoner could have, consistently with the legality of the sentence, he can have before the court which is to award execution, even if he do not appear before the higher court. (Such, also, was the case of *Rex* v. *Spike*, 3 *Salk*, 358; there the omission is called erroneous.) In 2 *Hale's Pleas of the Crown*, it is said: "If A be convicted at Oyer and Terminer of felony, and the record be removed to the King's Bench by *certiorari*, and the prisoner also be removed hither by *habeas corpus*, the court may give judgment after that conviction, but there must first be a filing of the record in the King's Bench, and he must be called to say what he can why judgment should not be given against him, and thereupon judgment may be given." So in *Sir Walter Raleigh's case*, C. J., 495, when the execution was extended for three years, he was afterwards brought into court, sentenced and executed. In *The People* v. *Taylor*, (3 *Denio*, 98, *note a*,) the court being about to impose sentence, the defendant's counsel objected that it could not be done in the defendant's absence. The court said, in substance, that when a corporeal punishment is to be inflicted, then " the rule is that such a sentence should not be imposed in his absence," but that if the court meant to impose a fine only, that rule would not apply, although the offence was such that the court in their discretion might fine or imprison.

In *The People* v. *Son*, (12 *Wend.* 348,) Savage, Ch. J., also

The People v. Clark.

says that the rule is, that when any corporeal punishment is to be inflicted on the defendant, he must be personally present in court when sentence is pronounced." And in *The People* v. *Winchill,* (7 *Cowen,* 525,) the court refused to render judgment until the prisoner should be brought into court although he was out on bail. None of these cases have shown what the rule is in the appellate court and they all are consistent with the idea that the defect would be ground only for the writ of error, and not for holding the judgment void. Chitty says, (*Cr Law,* 751,) that while the writ of error is pending, " in cases of felonies, the defendant must be in court upon all motions." He, however, quotes no authority for this, and we find none. The practice in our courts, in this respect, seems not to have been uniform. In the case of Rector, he was brought into court, and so in many other cases. In others, the argument has been without the presence of the prisoner. If the final judgment were in his favor of course he would not object, and if the judgment of the court below were against him, and that were affirmed on his writ of error he could not object. The cases in which the courts have proceeded without the presence of the prisoner are sufficiently numerous to lead to the conclusion that the presence of the prisoner in the higher court was not essential to its jurisdiction, even if his absence would make the proceedings erroneous. And when the highest court of the state gives a judgment which makes void an order for a new trial, and specially and carefully orders the sentence of death to be pronounced, it can hardly be supposed that it was done without that court considering that it had jurisdiction of the person of the prisoners. To obtain jurisdiction over the person, it is generally necessary only to have process served on the party, in due form of law, giving him such notice of the new action as the court regards as an equivalent to the bringing him into court. That was done in this case, by serving a copy of the writ of error on the prisoner. In other cases, especially in inferior courts, a special statute has sometimes prevented their obtaining jurisdiction unless the party were actually before the court. Such was *Bigelow* v. *Stearns,* (19 *J*

R. 39.)   In other cases it has been held that, if no process was served on a defendant and he did not appear in court by an attorney, the judgment against him was void.   Such was *Borden v. Fitch*, (15 *J. R.* 141,) and many others.   And it may be that the express statutory provision, (2 *R. S.* 735 *and* 18,) that " no person indicted for any felony can be tried unless he be personally present during such trial," would make void a trial when the person indicted was not present.   But the trial there intended is that which is properly called the trial, namely, that before the jury, as the rest of the title containing that section tends to show.

It is also true that at common law the defendant could not appear by counsel, and that the privilege to appear by counsel, now granted, was not intended to dispense with the prisoner's personal appearance.   But that again does not apply to the appellate court; there, it is believed, counsel could always argue for the accused.   Undoubtedly, the presence of the accused may be of great service to suggest to counsel even arguments of law, for self interest often excites an acuteness of perception in the client which the learning of the counsel may have failed to exhibit.   That is a fair argument why the prisoner should be present even in those cases, but not an argument to show that without his presence, the appellate court is without jurisdiction.

The statute authorizing the writ of error in behalf of the people was passed March 22d, 1852.   A motion was made in the court of appeals to dismiss the writ, on the ground that by the record, as made up for that court, the judgment of this court purported to have been given in February preceding; but it appeared that, although the argument was in February preceding, yet, in fact the judgment was rendered in May, 1852, and that court denied the motion.   That decision binds us to regard the writ as applicable to this case.   It was also argued, that the act of March 22, 1852, gave the court of appeals power only to review the judgment of the supreme court, and not to reverse or modify it; and it was argued that the appellate court, therefore only had power to review the

judgment and state what the law was, and that on the new trial the law thus announced should be declared and acted on. But that court has practically given a different construction to this act by specially directing that the judgment of this court be reversed, and that of the Oyer and Terminer in all things affirmed, and that the record be remitted to this court, " in order that this court may direct the sentence of death to be executed." Nothing remains for us in this place, but to execute the law as it is declared by the court of last resort. As when we reversed the judgment of Oyer and Terminer we would not interfere with the province of the jury by discussing the question whether in fact the prisoners were guilty or not, so now we will not depart from our proper sphere by expressing in this place any opinion as to the correctness of the decision of the higher court. It is our duty to obey it; and we do so.

---

SUPREME COURT. Cayuga General Term, June, 1852. *Selden, Strong* and *Johnson,* Justices.